**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SHAERON BURNETTE GRAY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:16-CV-01135-RWS |
| BANK OF AMERICA, N.A. and RODICA GRIGORAS, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**ORDER**

This matter is before the Court on Plaintiff Shaeron Gray's Motion to Remand [16] and Defendants Bank of America, N.A. and Rodica Grigoras's Motion to Dismiss [18] and Motion to Reconsider or, in the Alternative, to Dismiss Defendant Rodica Grigoras as Improperly Joined [19]. After considering the entire record, the Court enters the following Order.

**Background**

This case arises out of a dispute over the ownership of a joint business checking account between Plaintiff Shaeron Burnette Gray and Defendants Bank of America, N.A. ("BANA") and Rodica Grigoras. Plaintiff is the sole surviving co-signer of that account. (First Am. Compl., Dkt. [11] ¶ 17.)

BANA is a foreign corporation registered to do business in the State of Georgia. (Id. ¶ 1.) Ms. Grigoras is an employee of BANA, and resides in Georgia. (Id. ¶¶ 3, 8.)

On July 20, 1992, Bobby M. Burnette ("Decedent"), the father of Plaintiff, opened a business account ("Account") with Bank South, which was later acquired by BANA. (Id. ¶¶ 5-6, 10.) Ms. Grigoras, employed with BANA as a Senior Personal Banker, began working with Decedent on the Account in 2008. (Id. ¶¶ 8-9.) On March 15, 2011, apparently wishing to make Plaintiff a co-owner of the Account, Decedent added Plaintiff to his signature card upon Ms. Grigoras's advice. (Id. ¶¶ 10-13.) The signature card indicated the Account was "governed by . . . the Deposit Agreement and Disclosures," among other documents. (2011 Signature Card, Dkt. [11-2].) BANA and Decedent entered into one deposit agreement in 2011 when adding Plaintiff to the signature card, (id.); Plaintiff and BANA entered into another deposit agreement in 2013 when Plaintiff added her husband to the signature card on October 25, 2013.[1] (2013 Signature Card, Dkt. [18-4].)

[1] As will become apparent, the 2010 and 2013 deposit agreements are relevant to Plaintiff's claims. Because the two deposit agreements are identical in the relevant portions discussed, the Court will refer to a single "Deposit Agreement" for



AO 72A
(Rev.8/82)

Decedent died on September 3, 2013. (First Am. Compl., ¶ 15.) Soon after, Plaintiff notified Ms. Grigoras that her father had died. (Id. ¶ 16.) Ms. Grigoras then informed Plaintiff that Plaintiff was the sole surviving owner of the Account. (Id. ¶ 17.) Assuming sole ownership, Plaintiff withdrew $163,000 from the Account with Ms. Grigoras's help. (Id. ¶ 19.)

On April 11, 2014, individuals alleging to be heirs and beneficiaries of Decedent sued Plaintiff in the Superior Court of Gwinnett County seeking to recover funds withdrawn from the Account. (Id. ¶ 21.) Plaintiff then deposed Ms. Grigoras, who gave testimony individually and on behalf of BANA. (Id. ¶¶ 23-26.) On cross motions for summary judgment, the Superior Court of Gwinnett County found that the Account was owned by Decedent's estate, not Plaintiff. (Id. ¶ 28.) As a result, Plaintiff was liable to remit the $163,000 she withdrew. (Id. ¶ 30.)

On February 8, 2016, Plaintiff filed suit in the State Court of Fulton County against BANA[2] asserting a single count of negligence and seeking

simplicity.

[2] Technically, the defendant in Plaintiff's initial Complaint was Bank of America Corp. But on April 25, 2016, the Court granted Plaintiff's Motion to Substitute Party [6] and substituted BANA as the defendant.



AO 72A
(Rev.8/82)

damages caused by Plaintiff's reliance on Ms. Grigoras's advice as to her ownership of the Account. (See generally Compl., Dkt. [1-1].) BANA then removed the case to this Court asserting diversity jurisdiction. (See Notice of Removal, Dkt. [1].)

Shortly after removal, Plaintiff filed a Motion to Amend Complaint [8]. On April 28, 2016, the Court issued an Order noting that Plaintiff was entitled to amend her Complaint as a matter of course and authorizing her to proceed on the First Amended Complaint. (Apr. 28, 2016 Order, Dkt. [12].) In the First Amended Complaint, Plaintiff asserts negligent misrepresentation and breach of contract against BANA. (First Am. Compl., Dkt. [11] ¶¶ 31-45.) She also adds Ms. Grigoras as a Defendant, and includes her in the negligent misrepresentation claim. (Id. ¶¶ 31-37.)

On May 10, 2016, Plaintiff filed a Motion for Remand [16] because, with the addition of Ms. Grigoras, complete diversity was destroyed. (Pl.'s Mot. for Remand, Dkt. [16] at 2.) In response, Defendants filed a Motion to Reconsider [19], asking the Court to vacate its April 28, 2016 Order allowing Plaintiff to amend as a matter of course and denying Plaintiff's Motion to Amend [8] as moot. Defendants also filed a Motion to Dismiss Plaintiff's Amended



AO 72A
(Rev.8/82)

Complaint [18], arguing that it fails to state a claim.

## Discussion

### I. Defendants' Motion to Reconsider [19]

In their Motion to Reconsider [19], Defendants seek two separate avenues of relief. First, they ask the Court to vacate its April 28, 2016 Order allowing Plaintiff to add Ms. Grigoras as a Defendant through amendment as a matter of course. Alternatively, Defendants seek the dismissal of Ms. Grigoras under Federal Rule of Civil Procedure ("Rule") 21 for misjoinder. Because the Court ultimately finds that Ms. Grigoras is misjoined, it will only analyze Defendants' Rule 21 argument.

Rule 21 says that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." District courts may use Rule 21 to preserve diversity jurisdiction by dismissing a non-diverse party. Barnes v. Tidewater Transit Co., Inc., No. 1:13-cv-00537-JEC, 2014 WL 1092288, at *3 (N.D. Ga. Mar. 18, 2014). Indeed, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been



AO 72A
(Rev.8/82)

rendered." Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 572-73 (2004). The essential inquiry, however, is whether the non-diverse party is indispensable. Id. at 572. That inquiry is guided by Rule 19, which sets out two steps for deciding whether a party must be joined as indispensable. First, the court must decide if the party is "necessary" under Rule 19(a)(1). Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1039 (11th Cir. 2014). Then, if the party is "necessary," "but cannot be joined—i.e., because they are non-diverse—Rule 19(b) provides a list of factors to 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" Molinas Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1344 (11th Cir. 2011) (quoting FED. R. CIV. P. 19(b)).

Assuming that Ms. Girgoras is a "necessary" party, the Court finds that she is not indispensable under Rule 19(b). That Rule says:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> > (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;



AO 72A
(Rev.8/82)

> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Here, none of the Rule 19(b) factors weigh in favor of dismissal in Ms. Grigoras's absence. Ultimately, this case is about Ms. Grigroas's alleged negligence within the scope of her employment with BANA. Plaintiff insists that she is "seeking to hold [Ms.] Grigoras liable . . . to the extent [she] exceeded her scope of authority to act for BANA or if BANA refuses to ratify all or part of [Ms.] Grigoras's conduct." (Pl's Br. in Opp'n to Defs.' Mot. to Reconsider, Dkt. [23] at 4.) But Plaintiff does not allege in the First Amended Complaint that Ms. Grigoras was acting beyond the scope of her employment, nor do Defendants ever argue as much. Thus, this case is solely a question of *respondeat superior*. And in such cases, the employee is not an indispensable



AO 72A
(Rev.8/82)

party. Hillside Orchard Farms, Inc. v. Murphy, 473 S.E.2d 181, 185 (Ga. Ct. App. 1996).

Because Ms. Grigoras is not an indispensable party, the Court may dismiss her because she is nondiverse using Rule 21. Thus, Defendants' Motion to Reconsider or, in the Alternative, to Dismiss Defendant Grigoras as Improperly Joined [19] is **GRANTED** and Ms. Grigoras is **DISMISSED**. Without Ms. Grigoras, complete diversity is restored. As the lack of complete diversity was the sole basis underlying Plaintiff's Motion for Remand [16], that motion is **DENIED**.

## II. Defendants' Motion to Dismiss [18]

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient



AO 72A
(Rev.8/82)

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. See Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## B. Analysis

### *1. Negligent Misrepresentation*

Plaintiff alleges that BANA misrepresented ownership of the Account by "suppl[ying] false information to [Plaintiff]." (Am. Compl., Dkt. [11] ¶ 31.) Specifically, Plaintiff alleges that she "relied reasonably on BANA['s] . . . repeated representations that [Plaintiff] was an owner of the Account." (Id. ¶



AO 72A
(Rev.8/82)

34.) She also claims that, "[o]wnership of the Account was within the knowledge of BANA . . . not [Plaintiff]." (Id. ¶ 32.) Defendants argue that Plaintiff's allegations are insufficient to state a claim for negligent misrepresentation.

"The essential elements of negligent misrepresentation are '(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.'" Brannigan v. Bank of America Corp., No. 2:13-CV-00129-RWS, 2013 WL 6510787, at *6 (N.D. Ga. Dec. 12, 2013) (quoting Marquis Towers, Inc. v. Highland Grp., 593 S.E.2d 903, 906 (Ga. Ct. App. 2004)). Plaintiff cannot show that BANA owed her a duty, that BANA's representation of Plaintiff's ownership of the Account was false, nor that Plaintiff was reasonable in her reliance upon that representation.

First, for a negligence claim to arise, the defendant must breach a duty. "[T]he threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff." Ceasar v. Wells Fargo Bank, N.A., 744 S.E.2d 369, 373 (Ga. Ct. App. 2013). To establish a duty in this



AO 72A
(Rev.8/82)

case, Plaintiff relies on the language in the Deposit Agreement that says "[w]e owe you only a duty of ordinary care." (2010 Deposit Agmt., Dkt. [18-3] at 6; 2013 Deposit Agmt., Dkt. [18-5] at 4.)[3] But, "[a]bsent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of [a] contractual duty." Brannigan, 2013 WL 6510787, at *6 (alterations in original). So Plaintiff cannot rely on terms in the Deposit Agreement to establish a duty relevant to the tort of negligent misrepresentation. And, in Georgia, "the law is clear that a bank owes no legal duty to act as a customer's legal or financial advisor." First Union Nat. Bank of Georgia v. Gurley, 431 S.E.2d 379, 381 (Ga. Ct. App. 1993). BANA was therefore under no duty to advise Plaintiff whether Decedent's estate might have a claim for funds in the Account.

Second, by the terms of the Deposit Agreement governing the Account, Plaintiff was, in fact, an owner of the Account. This case is about conflating ownership of the *Account* with ownership of *the funds within* the Account.

---

[3] Plaintiff did not attach the Deposit Agreement to her Complaint or First Amended Complaint, but following the Eleventh Circuit's "incorporation by reference" doctrine, the Court may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment when the documents attached are "central to the plaintiff's claim . . . and . . . undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Both Plaintiff and Defendants rely upon the Deposit Agreements and neither challenges their authenticity.



AO 72A
(Rev.8/82)

From the perspective of BANA, the Account "owner" is simply an individual who is permitted by contract—the Deposit Agreement—to make decisions for the account, such as making deposits or withdrawing any or all funds within the account. (2010 Deposit Agmt., Dkt. [18-3] at 9; 2013 Deposit Agmt., Dkt. [18-5] at 6.) It is clear from the Deposit Agreement that multiple individuals may claim ownership of the funds within a joint account: "[a]ll persons whose names appear on the account are *co-owners* of the account, *regardless of whose money is deposited in the account*." (2010 Deposit Agmt., Dkt. [18-3] at 9; 2013 Deposit Agmt., Dkt. [18-5] at 6) (emphasis added). Plaintiff's name was added to the Account by Decedent, making her a co-owner. Therefore, BANA's statement of ownership is true: Plaintiff is a co-owner of the Account, regardless of whether others who are not Account owners may make claims for the funds in the Account.

Third, Plaintiff cannot reasonably rely upon statements of ownership of the funds within the Account for reasons closely related to those already discussed. BANA was under no duty to advise Plaintiff whether Decedent's estate might have a claim for funds in the Account. The terms of the Deposit Agreement also put Plaintiff on notice that the duty to determine rights of



AO 72A
(Rev.8/82)

survivorship was hers alone. Those terms were clear and unambiguous:

> The rights of survivorship continue between surviving co-owners and we may pay the funds in the account to any surviving co-owner. The applicable law may impose requirements that must be met to create a joint account with right of survivorship. You are solely responsible for meeting those requirements . . . We may take any action authorized or permitted by this Agreement without being liable to you, even if such action causes you to incur fees, expenses or damages.

(2010 Deposit Agmt., Dkt. [18-3] at 10, 37; 2013 Deposit Agmt., Dkt. [18-5] at 6, 20.)

The Georgia Court of Appeals has held that banks have no fiduciary duty to their customers and that *customers* of banks have the duty of investigation and are not entitled to rely upon the representations of bank employees. Pardue v. Bankers First Fed. Sav. & Loan Ass'n, 334 S.E.2d 926, 927 (Ga. Ct. App. 1985) (holding that, even if a bank had intended to advise its customer on tax liabilities and had actually misled the customer, the customer would not be entitled to rely upon that advice but would be under a duty to conduct their own inquiry about their tax liability). So Plaintiff was responsible for determining whether others might have legal claims to the funds in the Account. Plaintiff cannot therefore establish reasonable reliance.

Because Plaintiff cannot show that BANA owed her a legal duty, that BANA's representation of Plaintiff's ownership of the Account was false, nor that Plaintiff was reasonable in her reliance upon that representation, Defendant's Motion to Dismiss [18] is **GRANTED** as to negligent misrepresentation.

*2. Breach of Contract*

Turning to Plaintiff's final claim, Plaintiff alleges that BANA's failure to "properly make [Plaintiff] an owner of the Account . . . constitutes a breach of contract." (First Am. Compl., Dkt. [11] ¶¶ 41-42.) The elements of a breach of contract claim are "the breach and the resultant damages to the party who has the right to complain about the contract being broken." Budget Rent-A-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996). For the reasons that follow, the Court finds that Plaintiff has failed to state a claim for breach of contract.

As an initial matter, Plaintiff's First Amended Complaint presents four deficiencies that, taken together, merit granting a motion to dismiss for failure to state a claim for breach of contract. First, Plaintiff does not identify a specific contract. Plaintiff alleges that "BANA and [Plaintiff] are parties to a



AO 72A
(Rev.8/82)

contract," (First Am. Compl., Dkt. [11] ¶ 38), but does not specify whether that contract is written or oral or what its terms include. Compounding that problem, Plaintiff did not attach the contract BANA allegedly breached. The only documents attached to the First Amended Complaint are a transcript of Ms. Grigoras's deposition and a copy of the 2011 signature card. The 2010 and 2013 Deposit Agreements are only in the record because Defendants attached them to their Motion to Dismiss [18]. Third, Plaintiff does not specify what provisions of the contract BANA allegedly breached. Plaintiff comes closest by alleging "BANA failed to properly make [Plaintiff] an owner of the Account. BANA's failure to comply with a material issue to the agreed upon contract constitutes a breach of contract." (First Am. Compl., Dkt. [11] ¶¶ 41-42.) But this allegation, without more, is insufficient to survive a motion to dismiss.

Despite these deficiencies, Plaintiff's briefing seems to indicate that the Deposit Agreement is the basis of her breach of contract claim. Thus, the Court will assume that is the case and analyze Plaintiff's breach of contract claim in that light. See Federal Deposit Ins. Corp. v. West, 260 S.E.2d 89, 91 (Ga. 1979) ("The deposit agreement, if any, the signature card and the checks

drawn against the account are the contract documents between the bank and the customer.").

Even doing so, Plaintiff has not stated a claim for breach of contract. Plaintiff alleges that BANA breached the contract by "fail[ing] to properly make [Plaintiff] an owner of the Account." (First. Am. Compl., Dkt. [11] ¶ 41.) But, the Deposit Agreement says that "[a]ll persons whose names appear on the account are co-owners of the account, regardless of whose money is deposited in the account." (2010 Deposit Agmt., [18-3] at 9; 2013 Deposit Agmt., Dkt. [18-5] at 6.) Because Plaintiff's name was indeed "on the account," she was an owner. (2011 Signature Card, Dkt. [11-2]; 2013 Signature Card, Dkt. [18-4].) Therefore, BANA did not breach the contract by failing to make Plaintiff an owner of the Account.

To the extent Plaintiff's real allegation is not that BANA breached the Deposit Agreement by failing to make Plaintiff an owner of the Account, but instead by failing to properly determine the ownership of the funds within the Account, that claim also fails. Plaintiff does not point to a provision within the Deposit Agreement that would place on BANA the duty of determining ownership of the funds within the Account. In fact, multiple provisions of the



AO 72A
(Rev.8/82)

Deposit Agreement disclaim such a duty. For example, one provision says that "[w]e do not have to inquire about the source or ownership of any funds we receive for deposit or about the application of any withdrawal or payment from an account." (2010 Deposit Agmt., Dkt. [18-3] at 9; 2013 Deposit Agmt., Dkt. [18-5] at 6.) Another provision says that "[w]e may act on the oral or written instructions of any one signer on the account. Each signer may make withdrawals, write checks, [and] transfer funds . . . ." (2010 Deposit Agmt., Dkt. [18-3] at 38; 2013 Deposit Agmt., Dkt. [18-5] at 21.)

As co-owner of the Account, Plaintiff authorized BANA to pay the funds in the Account to her, all of which she was entitled to do by the express terms of the Deposit Agreement. That does not mean, however, that BANA was under a contractual duty to ensure that Plaintiff was the sole owner of the funds within the Account. The Deposit Agreement expressly reserved that duty for Plaintiff. (See 2010 Deposit Agmt., Dkt. [18-3] at 10; 2013 Deposit Agmt., Dkt. [18-5] at 6.) So even assuming the Deposit Agreement is the basis of Plaintiff's breach of contract claim, Plaintiff has failed to state a plausible claim that BANA breached that contract. Defendants' Motion to Dismiss [18] is **GRANTED** as to breach of contract.

## Conclusion

As discussed above, Defendants' Motion to Reconsider or, in the Alternative, to Dismiss Defendant Grigoras as Improperly Joined [19] is **GRANTED**, Plaintiff's Motion for Remand [16] is **DENIED**, and Defendants' Motion to Dismiss [18] is **GRANTED**.

**SO ORDERED**, this 10th day of February, 2017.

**RICHARD W. STORY**
United States District Judge



AO 72A
(Rev.8/82)